**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JENIPHER OWUOR, CHARLES OWUOR,** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 26-815** |
| **SUNNYMAC, LLC, JK RENEWABLES, LLC, MATTHEW MACFADDEN, SUNSTRONG CAPITAL HOLDINGS, LLC** | : | |

# MEMORANDUM

**MURPHY, J.** **July 23, 2026**

This is not the first case alleging that a solar-energy company perpetrated a "cringeworthy scam" against unsuspecting homeowners.[1] Although the legal theories in this case are many, the dispute itself is straightforward. Plaintiffs Jenipher and Charles Owuor allege that defendants sold them a solar-panel system by: telling Mr. Owuor that the system would be free under a state program; forging their signatures (complete with a misspelling of Jenipher's name); fraudulently credit-checking Ms. Owuor; installing the system on their home without permission; and then refusing to undo any of it when challenged. As one might imagine, the amended complaint states many counts, but only one under federal law: the Fair Credit Reporting Act (FCRA). The solar-panel system company defendants moved to dismiss the entirety of the amended complaint under Rule 12(b)(6). We grant the motion to dismiss as to the FCRA claim under controlling Third Circuit precedent, but before remanding to state court, we will give the Owuors a chance amend if they can, and all parties the opportunity to be heard on the prospect of remand.

[1] *Migliore v. Vision Solar LLC*, 160 F.4th 79, 92 (3d Cir. 2025).

## I. Background

Mr. and Mrs. Owuor are senior citizens who live together in East Norriton, Pennsylvania. DI 13 ¶¶ 9-10. Mrs. Owuor jointly owns the home with her daughter. *Id.* at ¶ 24. Defendant SunnyMac, LLC markets, sells, designs, installs, and services residential solar-energy systems. *Id*. at ¶¶ 11-13. Defendant Matthew MacFadden is SunnyMac's CEO and owner. *Id.* at ¶¶ 14-15.

In June 2024, a salesperson named Sharday Smith came to the Owuors' home. *Id.* at ¶ 26. Ms. Smith, acting as a representative for SunnyMac and JK, told Mr. Owuor that there was a "state program" through which solar panels could be installed on the home at no cost because the state would pay for them. *Id.* at ¶¶ 26-27, 34-35. During that interaction, Ms. Smith put Mr. Owuor on the phone with Mr. MacFadden, who emphasized the benefits of the "PA Energy Program" and told Mr. Owuor that the solar panel system was "free." *Id.* at ¶ 28. Mr. Owuor asked who SunnyMac was, and Mr. MacFadden responded that SunnyMac was a subsidiary of "Sunnova" and that Sunnova would be in charge. *Id.* at ¶ 29. Mr. MacFadden also asked Mr. Owuor whether he owned the home, and Mr. Owuor confirmed that he did not. *Id.* at ¶ 30. Relying on the representations that the system would be free, Mr. Owuor agreed to a roof survey to facilitate the free installation. *Id.* ¶ 31.

Neither Mr. nor Mrs. Owuor signed any contracts or documents, and no contract was mentioned. *Id.* at ¶ 32. Mrs. Owuor never spoke with SunnyMac, JK, or MacFadden about the installation of a solar panel system, the cost of any system, or any contract. *Id.* at ¶ 33. Despite this, a solar panel system was installed on the Owuors' home in or around October 2024. *Id.* at ¶ 37.

In February 2025, Mrs. Owuor learned from a friend that the solar panel system would not be free. *Id.* at ¶ 38. After further inquiry, the Owuors discovered three documents: an unsigned "Home Improvement Agreement Amendment" dated October 8, 2024, listing a contract price of $55,480; a "Residential Home Improvement Agreement" dated June 12, 2024; and a "Credit Check Authorization Form" for Mrs. Owuor, also dated June 12, 2024. *Id.* at ¶¶ 39-42. The first two documents listed the primary buyer as "Jennifer Owuor," and the credit authorization form likewise used the misspelled name "Jennifer" (instead of Jenipher). *Id.* ¶¶ at 40-42. Mrs. Owuor has never signed her name as "Jennifer," and the Owuors allege that the signatures and initials purporting to be hers on the RHIA and Credit Check Authorization Form are forgeries. *Id.* at ¶¶ 43-44. She was also working at a Wells Fargo branch when the documents were allegedly signed. *Id.* at ¶ 45. SunnyMac never mailed, emailed, or otherwise delivered the RHIA or Credit Check Authorization Form to Mrs. Owuor, and the Owuors allege that they never agreed to receive documents electronically. *Id.* at ¶¶ 46-47. According to the complaint, the October 2024 HIAA was an attempt to cover up and legitimize the allegedly fraudulent RHIA after defendants knew that Mrs. Owuor had not signed it. *Id.* at ¶ 48.

As part of the alleged scheme, SunnyMac and JK obtained and used Mrs. Owuor's Experian consumer report on June 12, 2024 without notice, permission, authorization, or a permissible purpose. *Id.* at ¶ 50, 57. SunnyMac obtained and used that report through JK and/or MacFadden, who forged Mrs. Owuor's credit consent using the incorrect spelling "Jennifer." *Id.* at ¶ 51. SunnyMac, JK, and MacFadden knew that Mrs. Owuor had not initiated or authorized any credit transaction, had not initiated any business transaction, was not involved in any credit transaction, and had not authorized use of her consumer report. *Id.* at ¶¶ 52-56.

The Owuors catalog their harms as follows. They have been burdened, not benefited, by the solar panel system. *Id.* at ¶ 81. Removal of the system and related repairs will cost thousands of dollars. *Id.* The assignee of the loan has demanded payment on loan documents they did not sign, with a claimed balance of more than $40,000. *Id.* at ¶ 82. Their home remains burdened and title remains clouded by a UCC-1 filing listing both Mr. Owuor and "Jennifer" Owuor as debtors. *Id.* at ¶ 83. And now they seek as damages the purported loan obligations, auto-debit payments allegedly taken from their bank account, the solar panel system, and the costs of removing the system and making repairs. *Id.* at ¶¶ 86, 103, 114, 122, 127, 136.

## II. Motion at Issue

The Owuors filed an original complaint on February 9, 2026, and an amended complaint adding SunStrong as a defendant on April 27, 2026. DI 1, 13. The amended complaint lists several causes of action, which can be placed into three rough categories. First, the Owuors bring credit and consumer-protection claims under the Fair Credit Reporting Act (FCRA), the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), the Home Improvement Consumer Protection Act (HICPA), and the Pennsylvania Credit Services Act (PACSA). *See* DI 13 at ¶¶ 64-103, 137-42. Second, they bring tort and fraud-based claims for fraud in the execution, fraudulent nondisclosure, and negligence. *See id.* at ¶¶ 104-22. And third, they bring an identity-theft claim under Pennsylvania law. *See id.* at ¶¶ 123-27.

SunnyMac and MacFadden (the SunnyMac defendants) moved to dismiss the amended complaint under Rule 12(b)(6). DI 19. They argue that plaintiffs' claims are internally inconsistent because plaintiffs deny signing any contract, purchasing anything, or agreeing to any loan, while also bringing claims that defendants say depend on a purchase, contract, loan, or credit-services relationship. DI 19-1 at 1-2; DI 38 at 1-2. The Owuors oppose dismissal and

argue that the amended complaint plausibly alleges a forged solar transaction, deceptive sales practices, concealed loan documents, unauthorized use of Mrs. Owuor's credit report, and resulting financial and property-related harm. DI 27 at 1-3, 9-20. After the SunnyMac defendants filed a reply, plaintiffs filed a sur-reply addressing the argument that plaintiffs did not suffer an ascertainable loss under the UTPCPL. DI 38; DI 41-2. We focus here on the motion to dismiss the FCRA claim, grant the motion, and reserve ruling on the remaining causes of action in anticipation of remand to the Court of Common Pleas of Montgomery County.

## III. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content allowing the court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal,* 556 U.S. at 678. Mere legal conclusions or threadbare recitals of the elements of a cause of action will not suffice. *Id.*

## IV. Discussion

### A. Mrs. Owuor's FCRA claim is dismissed because the alleged credit pull had a permissible purpose under *Migliore*.

The FCRA limits the circumstances under which a person may obtain or use a consumer report. Section 1681b(f) provides that a person may not obtain or use a report unless it is obtained for a purpose authorized by the statute and that purpose is properly certified. 15 U.S.C. § 1681b(f). One authorized purpose is the use of a report "in connection with a credit transaction involving the consumer" and involving an extension of credit to that consumer. *Id.* § 1681b(a)(3)(A). Thus, to state a claim under § 1681b(f), Mrs. Owuor must plausibly allege

that defendants obtained or used her consumer report without a permissible statutory purpose. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191-92 & n.10 (3d Cir. 2009).

Mrs. Owuor alleges that the SunnyMac defendants obtained and used her Experian report to determine whether she qualified for financing connected to the solar panel system. DI 13 at ¶¶ 50-57. But she also says that she never requested credit, never authorized defendants to obtain her report, and was at work when the alleged transaction occurred. *Id.* ¶¶ 45, 52-56. She further alleges that defendants created a credit-authorization form bearing a forged signature and the misspelled name "Jennifer." *Id.* ¶¶ 42-45, 51. So the question is whether these allegations establish that the SunnyMac defendants lacked a permissible purpose.

The Third Circuit recently addressed allegations similar to Mrs. Owuor's in *Migliore v. Vision Solar LLC*, 160 F.4th 79 (3d Cir. 2025). There, a solar-energy salesperson offered a homeowner "free" solar panels without mentioning, presenting, or asking her to sign any paperwork. *Id.* at 85. The homeowner later discovered that the salesperson had allegedly forged her signature on a contract and a credit-authorization form for a twenty-five-year loan. *Id.* The lenders had obtained the homeowner's credit report to determine whether she met their credit requirements. *Id.* at 91. Although the homeowner alleged that she neither applied for nor consented to the credit transaction, the Third Circuit held that the lenders had obtained the report for a permissible purpose under § 1681b(a)(3)(A). *Id.* at 91-92. Whether the salesperson submitted the credit application without the homeowner's consent was "not pertinent to whether she stated a Credit Reporting Act claim" because the report was obtained to assess her eligibility for credit. *Id.* at 92.

*Migliore* controls here. Like the plaintiff in *Migliore*, Mrs. Owuor alleges that a solar company used her consumer report to determine whether she qualified for financing attached to a

solar transaction, even though she did not apply for credit and her purported authorization was forged. DI 13 at ¶¶ 42-57. And just as in *Migliore*, the report was nevertheless used "in connection with a credit transaction involving" Mrs. Owuor because its purpose was to determine her eligibility for the credit used to finance the system. 160 F.4th at 91-92.

The Owuors attempt to distinguish *Migliore* because the defendants there were lenders, while the SunnyMac defendants allegedly participated in creating the unauthorized transaction. DI 27 at 7-9. They highlight the Third Circuit's observation that the *Migliore* plaintiff "might have had viable claims against the salesman's company and its CEO." *Migliore*, 160 F.4th at 92. However, that observation does not alter the Third Circuit's clear holding. The Third Circuit did not suggest that § 1681b(a)(3)(A)'s permissible-purpose inquiry changes depending on whether the defendant is a lender, seller, or installer.[2] Rather, the inquiry turns on the purpose for which the report was obtained or used. *See id.* at 91-92. And according to the amended complaint, the purpose here was to assess Mrs. Owuor's creditworthiness for the transaction. DI 13 at ¶¶ 50-57.

We are similarly unpersuaded by Mrs. Owuor's out-of-circuit authority holding that § 1681b(a)(3)(A) generally applies only when the consumer initiates the underlying transaction. *See Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046-47 (7th Cir. 2005) ("[A]n entity may rely on section 1681b(a)(3)(A) only if the consumer initiates the transaction."); *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674-76 (9th Cir. 2010) (en banc) ("[Section] 1681b(a)(3)(A) can be relied upon by the party requesting a credit report only if the consumer initiates the transaction."). Whatever force those decisions might carry in their

[2] In *Migliore*, the plaintiff abandoned her claims against the solar-energy company, apparently because it had gone bankrupt. The "viable claims" the Third Circuit hypothesized were quite probably the same sort of state-law claims the Owuors brought in this case. The Third Circuit said nothing about FCRA claims against the solar-energy company.

respective circuits, we are bound by the Third Circuit's interpretation of the same statutory language in a materially similar solar-financing dispute in *Migliore*. *Migliore* held that a consumer's lack of consent did not defeat the credit-checkers' permissible purpose where the report was used to evaluate the consumer for credit, and we apply that holding here. 160 F.4th at 91-92. The FCRA claim is dismissed.

**V. Conclusion**

For the reasons above, we grant the SunnyMac defendants' motion to dismiss the FRCA claim without prejudice. With the FCRA claim dismissed, no federal claim remains; the remaining claims arise under Pennsylvania law, over which we may decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). In our accompanying order, we therefore give the parties an opportunity to be heard on the prospects of a second amended complaint and a remand to the Court of Common Pleas of Montgomery County.